UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| Diana O'Brien, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| Mac's Convenience Stores LLC, | * |
| | * |
| Defendant | * |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff, Diana O'Brien, by and through her attorney, hereby complains against Defendant, Mac's Convenience Stores LLC, as follows:

**JURISDICTION AND ADMINISTRATIVE PROCEEDINGS**

(1)  This action arises under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101 et seq.; the Civil Rights Act of 1991, 42 U.S.C. § 1981a; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); the Maine Family Medical Leave Requirements, 26 M.R.S. §§ 843-849 ("Maine FMLR"); and the Maine Human Rights Act (the "MHRA"), 5 M.R.S. §§ 4551 et seq.

(2)  This court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, 42 U.S.C. § 12117(a), and 29 U.S.C. § 2617(a)(2).

1

(3) This court has proper supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a).

(4) Declaratory, injunctive, and equitable relief is sought under 28 U.S.C. §§ 2201, 2202; 42 U.S.C. § 2000e-5; 29 U.S.C. § 2617; 26 M.R.S. § 848; and 5 M.R.S. §§ 4613(2)(B).

(5) Compensatory and punitive damages are sought under 42 U.S.C. § 1981a and 5 M.R.S. § 4613(2)(B)(8).

(6) Liquidated damages are sought under 29 U.S.C. § 2617 and 26 M.R.S. § 848

(7) Costs and attorney's fees are sought under 29 U.S.C. § 2617; 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12005; 26 M.R.S. § 848; 5 M.R.S. § 4614; and Rule 54 of the Federal Rules of Civil Procedure.

(8) This action properly lies in the District of Maine under 28 U.S.C. § 1391(b), because the claims arose in this judicial district.

(9) This action is properly filed and shall be tried in Bangor because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Penobscot County, Maine.

(10) On or about May 4, 2020, Plaintiff filed a charge of employment discrimination against Defendant with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

(11) On November 16, 2020, the MHRC issued Plaintiff a right-to-sue letter under the MHRA, 5 M.R.S. § 4612(6).

(12) On November 18, 2020, the EEOC issued Plaintiff a Dismissal and Notice of Rights letter under Title VII, 42 U.S.C. §§ 2000e-5(f)(1), 12117.

(13) All preconditions precedent required to obtain the relief listed in 5 M.R.S. § 4622(1) and for EEOC administrative exhaustion have been performed or have occurred.

## PARTIES

(14) Plaintiff is a citizen of the United States and the State of Maine who resides in the City of Auburn, Androscoggin County, State of Maine.

(15) Defendant, Mac's Convenience Stores LLC, is a Delaware corporation with headquarters in Columbus, Indiana.

(16) At all material times to this complaint, Defendant did business as Circle K.

(17) At the time of the discriminatory practices alleged herein, Plaintiff was employed by Defendant and assigned to work at a Circle K store in the City of Bangor, Penobscot County, State of Maine.

(18) At all material times to this complaint, Defendant had 15 or more employees for purposes of coverage under the ADA.

(19) At all material times to this complaint, Defendant had more than 500 employees for purposes of the damages caps under the MHRA, 5 M.R.S. § 4613(2)(B)(8)(e)(iv), and the ADA, 42 U.S.C. § 1981a(b)(3)(D).

(20) At all material times to this complaint, Defendant was engaged in an industry affecting commerce and had 50 or more employees at or within 75 miles of Plaintiff's worksite for each working day in each of 20 or more calendar weeks.

## **STATEMENT OF FACTS**

(21) Plaintiff worked for Defendant or its prior entities since 2003.

(22) At the time of her termination, she was employed as a Manager in Training at one of Defendant's Circle K convenience stores in Bangor, Maine.

(23) At the time of the alleged discriminatory practices herein, Plaintiff's husband had stage IV liver cancer before he passed away from it on February 8, 2020.

(24) Coping with her husband's cancer and impending death caused Plaintiff to experience mental impairments, including persistent adjustment disorder, major depressive disorder, and anxiety disorder.

(25) Plaintiff's mental impairments significantly impaired her mental health, meaning they had an actual or expected duration of more than six months and impaired her mental health to a significant extent as compared to what is ordinarily experienced in the general population.

(26) They also substantially limited one or more major life activities, including sleeping, concentrating, thinking, and working.

(27) Major depressive disorder is also a per se disability under the MHRA, 5 M.R.S. § 4553-A(1)(B).

(28) Defendant also regarded Plaintiff as having or being likely to develop the above-described mental disabilities.

(29) At the time of her leave of absence described below, Plaintiff had worked for Defendant for more than 12 consecutive months and had worked at least 1,250 hours during the previous 12-month period.

(30) During her leave, Plaintiff was under the continuing treatment of a healthcare provider.

(31) Plaintiff took a medical leave of absence for her mental impairments from early June 2019 until her termination on October 17, 2019.

(32) Initially, she requested the leave to care for her dying husband but later clarified that she also needed the leave because her own disability rendered her temporarily unable to work.

(33) Plaintiff kept Defendant informed of her status during her leave, including having her providers fax the certifications it requested.

(34) For example, on June 19, 2019, Plaintiff's doctor faxed paperwork to Defendant stating that Plaintiff had persistent adjustment disorder with mixed anxiety and depressed mood, that she was not able to return to work at that time, that she would be incapacitated for a single continuous period of time, that she would be referred to psychiatry if her condition did not improve, and that her next evaluation was on September 19, 2019.

(35) On September 5, 2019, Plaintiff's doctor faxed a document to Defendant's Short Term Disability administrator, which stated that the expected duration of Plaintiff's work activity impairments was "3-6 months."

(36) On September 6, 2019, Defendant's Absence Management Partner ("AMP"), with whom Plaintiff was instructed to communicate regarding her leave, wrote to Plaintiff requesting

an updated Certification of Employee's Fitness for Duty form, which the AMP stated was due on or before September 21, 2019.

(37) On September 11, 2019, Plaintiff's doctor faxed the requested updated form to the AMP.

(38) It stated that Plaintiff could not return to work at that time, described Plaintiff's mental limitations as being "[t]rouble with concentration/attention," and gave an anticipated duration of her restrictions as "1-3 months."

(39) On September 30, 2019, the AMP wrote to Plaintiff that her leave had been continued as an accommodation under the ADA. She gave no indication that further information was needed.

(40) On Friday, October 4, 2019, Plaintiff received a text message from a Circle K store manager who was working with Plaintiff's supervisor, which stated that Plaintiff needed to call either the manager or supervisor right away.

(41) Plaintiff did so and subsequently followed up by text that she had called her doctor, emailed the AMP, and tried to call and left a message for the AMP.

(42) In her October 4, 2019, email to the AMP, Plaintiff explained that she had previously given the requested form to her doctor, that her doctor had faxed the form to Defendant, and that she had another appointment the following Monday and would nevertheless bring the fax with her for the doctor to fill out.

(43) On Monday, October 7, 2019, Plaintiff again emailed the AMP, stating that she had been to her doctor (it was actually her counselor) that day, who had faxed another form. The form, another Certification of Employee's Fitness for Duty, is dated October 7, 2019, was

6

(43) filled out by Plaintiff's counsel, stated that the anticipated duration of Plaintiff's restrictions were unknown at that time, and was faxed to the AMP on October 7, 2019.

(44) On October 17, 2019, the AMP wrote to Plaintiff, stating that she had not received a form from Plaintiff's medical provider certifying her continuing need for leave and "[b]ecause Circle K has received no communication from you, we assume that you have chosen to resign your position with the Company."

(45) When Plaintiff received the October 17th termination letter, she called the AMP and explained that she had been sending the paperwork that had been requested, that her doctor had faxed the forms, she questioned why she was nevertheless being fired, and she made clear that was not resigning.

(46) When Plaintiff asked the AMP what more she could do, the AMP told her there was nothing she could do because she had already been terminated. Plaintiff asked twice and got the same answer.

(47) Defendant intentionally terminated Plaintiff's employment because of her mental impairments, because of her association with a person with cancer (her husband), and in retaliation for taking a medical leave of absence.

(48) Defendant also failed to provide Plaintiff with a reasonable accommodation of a continued medical leave of absence and failed to participate in good faith in the interactive process to identify and implement a reasonable accommodation.

(49) At all material times to this complaint, Plaintiff was able to perform the essential functions of her job with Defendant with a reasonable accommodation of a continued, short-term leave of absence.

(50) Defendant engaged in intentional discrimination against Plaintiff with actual or implied malice or with reckless indifference to Plaintiff's rights under the ADA and the MHRA.

(51) As a result of Defendant's unlawful discrimination in employment against Plaintiff as alleged herein, Plaintiff has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, emotional distress, and other pecuniary and non-pecuniary losses.

(52) Plaintiff has no plain, adequate or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by Defendant unless it is enjoined by this court.

## COUNT I: ADA

(53) Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

(54) Defendant failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine appropriate reasonable accommodations, in violation of the ADA.

(55) Defendant is liable under the ADA because it failed to provide Plaintiff with a reasonable accommodation of a continued medical leave of absence, in violation of the ADA.

(56) Defendant intentionally discharged Plaintiff from employment because of her disabilities, in violation of the ADA.

(57) Defendant intentionally discharged Plaintiff from employment because of her husband's disability, in violation of the ADA.

(58) Defendant intentionally discharged Plaintiff from employment in retaliation for her taking a reasonable accommodation of a medical leave of absence, in violation of the ADA.

## COUNT II:  FMLA

(59) Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

(60) Defendant discharged Plaintiff from employment because she took a FMLA-protected leave, in violation of the FMLA.

## COUNT III:  MHRA

(61) Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

(62) Defendant failed to engage, in good faith, in an informal, interactive process with Plaintiff to determine appropriate reasonable accommodations, in violation of the MHRA.

(63) Defendant is liable under the MHRA because it failed to provide Plaintiff with a reasonable accommodation of a continued medical leave of absence, in violation of the MHRA.

(64) Defendant intentionally discharged Plaintiff from employment because of her mental disabilities, in violation of the MHRA.

(65) Defendant intentionally discharged Plaintiff from employment because of her husband's physical disability, in violation of the MHRA.

(66) Defendant intentionally discharged Plaintiff from employment in retaliation for her taking a reasonable accommodation of a medical leave of absence, in violation of the MHRA.

## COUNT IV: MAINE FMLR

(67) Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

(68) Defendant discharged Plaintiff from employment because she took a Maine FMLR-protected leave, in violation of the Maine FMLR.

## DEMAND FOR JURY TRIAL

(69) Plaintiff demands a trial by jury on all matters to which Plaintiff has a right to trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) Enter Judgment in her favor;

(b) Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

(c)  Enjoin Defendant, its agents, successors, employees, and those acting in concert with Defendant, from continuing to violate the rights of the Plaintiff;

(d)  Order Defendant to employ Plaintiff as if none of the discrimination had occurred or, in lieu of employment if such employment is determined to be impracticable, order front pay and benefits;

(e)  Award Plaintiff equitable-relief for back pay, benefits and prejudgment interest;

(f)  Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(g)  Award Plaintiff an amount to offset the state and federal taxes she will be required to pay for compensatory damages and any increased taxes she will have to pay because she has received a lump sum for lost wages;

(h)  Award Plaintiff nominal damages;

(i)  Award Plaintiff punitive damages in an amount to be determined at trial of this matter;

(j)  In the absence of an award of wages, salary, employment benefits or other compensation denied or lost, order Defendant to pay liquidated damages of $100 to Plaintiff for each day that the violation continued, as provided in 26 M.R.S. § 848(1);

(k)  Award Plaintiff liquidated damages as provided in 26 M.R.S. § 848(2);

(l)  Award Plaintiff liquidated damages as provided in 29 U.S.C. § 2617(a)(1)(A)(iii);

(m)  Award Plaintiff attorney's fees, including legal expenses, and costs of suit;

(n)     Award Plaintiff prejudgment interest; and

(o)     Grant Plaintiff such other and further relief as may be just and proper.

Dated: February 2, 2021                    /s/ John Gause
_____
John P. Gause, Esq., Bar No. 8192
Eastern Maine Law, LLC
23 Water St., Suite 202
Bangor, ME 04401
(207) 947-5100
jgause@easternmainelaw.com

ATTORNEY FOR PLAINTIFF